# Mount Vernon Corp. v. Revenue Commissioner

*Cushman & Obert,* for plaintiff.

*Abraham L. Freedman,* City Solicitor, for defendant.

BROWN, P. J., April 23, 1957.—This is an appeal from the Tax Review Board of the City of Philadelphia. Mount Vernon Corporation, appellant, petitioned the board for a review of a disputed assessment of the mercantile license tax for the years 1953 and 1954. Appellant reported in its respective returns a tax of $1,882.51 for 1953 and $1,930.12 for 1954. These amounts were increased by subsequent assessments of the commissioner of revenue of the city to $2,858.86 for 1953 and $2,276.40 for 1954. The higher assessments resulted because appellant's taxes were recomputed at the rate of three mills on each dollar of the annual gross volume of business transacted, instead of at the alternative rate of two percent of the annual gross business transacted less the cost of goods and labor, which had been used by appellant in its returns.

In the Mercantile License Tax Ordinance of December 9, 1952, Ordinances 1952, pages 515, 518, 519, the alternative rate of two percent of gross business less the cost of goods and labor, which appellant asserts it is entitled to utilize in computing its tax liability under

the ordinance, is available to "a manufacturer". Hence, the question presented for determination in this proceeding is whether appellant corporation is a "manufacturer" within the meaning of the ordinance. See chapter 19-1000, Mercantile License Tax, Code of General Ordinances of the City of Philadelphia.

There appears to be no real dispute with respect to the pertinent facts. At the hearing before the board, evidence was produced which showed that appellant is engaged primarily in the mass construction or production of row houses consisting of single-family units by means of an assembly line technique. It is not engaged in any operations involving factory buildings, office buildings or other commercial structures. A development is commenced by appellant with the acquisition of a tract of unimproved land. It provides for the necessary installation of public utilities and paved streets. Engineering and design of the units in the development follows. Foundations are then installed in the dwellings one after the other along the line in preparation for the subsequent steps in the operation. After the placing of "footages" or "footers" in the manner described, partitions or panels are placed in position at three or four house locations at a time, in order to hold the ready-mixed concrete which is poured in between the panels to form the walls of the building. These panels are removed when the concrete has hardened and placed further down where the process is repeated until the entire development is completed. In some single-house construction, the siding or wall unit is prefabricated and lifted into place when completed. In addition, flooring, roofing, interior trim and wood panels are also prefabricated on the site by appellant. The units are sold to private owners and not to any development company or dealer in real estate.

It has been held that: "Statutes are presumed to employ words in their popular sense, and when the

words used are susceptible of more than one meaning, the popular meaning will prevail": Marsh v. Groner, 258 Pa. 473, 478; Commonwealth v. Bay State Milling Co., 312 Pa. 28, 31.

Quite clearly, the word "manufacturer", when used in the popular sense, does not embrace the construction or erection of houses. In urging a contrary conclusion, great stress is laid upon the process utilized by appellant in its operations and the methods employed. In reviewing and analyzing the cases which are concerned with this problem, we find the emphasis is usually placed upon the materials which are involved, what is done to those materials and the resulting product. Thus, there is no suggestion in the authorities that one who is not a manufacturer becomes one merely by virtue of the fact that his operations become more efficient and modern. For example, in a case which involved a tax exemption, it was held that a company engaged in producing electricity and selling it for the generation of light, heat and power was not a manufacturing corporation: Commonwealth v. Light and Power Company, 145 Pa. 105, 111.

One definition employed in the determination of the meaning of the word manufacture for tax purposes is that: "It is making. To *make* in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process": Norris Brothers v. The Commonwealth, 27 Pa. 494, 496.

This, of course, does not require a conclusion that since appellant utilizes materials which are not entirely raw, it must be held to be a manufacturer. It merely means that a manufacturer need not employ all

raw materials. Whether the materials used are raw or processed, there must be " 'the application of labor or skill to material whereby the original article is changed to a new, different and useful article, provided the process is of a kind popularly regarded as manufacture or the product of such process' ": Commonwealth v. Weiland Packing Co., 292 Pa. 447, 449. It should be noted that whatever the operation and product in question, it must be popularly regarded as manufacturing.

It would appear to be a contradiction in terms to hold that appellant is a builder and at the same time that he must be what would popularly be regarded as a manufacturer. There are numerous cases which deal with the legal meaning of the word manufacture. A process whereby paper and glue are converted into sealing tape was held to be manufacturing: Commonwealth v. Peerless Paper Specialty, Inc., 344 Pa. 283, 285-286. Cleaning, sorting and baling hair by means of automatic machinery, on the other hand, has been held not to be a manufacturing process: Commonwealth v. Densten Felt & Hair Company, 304 Pa. 536, 538-539.

"It has been well stated that it is sometimes difficult to determine with legal exactness what is and what is not manufacturing, or what part of a business or plant may be so engaged. It has been held that a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use. . . .": Commonwealth v. McCrady-Rodgers Company, 316 Pa. 155, 158.

That case, while holding that the production of concrete is manufacturing, made reference to authority (Commonwealth v. Wark Co., 301 Pa. 150) for the proposition that ". . . a corporation engaged in construction and erecting buildings is not employed in manufacturing. If that company, though chartered to

manufacture, made concrete for abutments and piers as an incident to its general business of a builder, it would not, in so doing, be engaged in manufacturing": Commonwealth v. McCrady-Rodgers Company, supra, 160. Thus, it is clear that despite the utilization of a process or operation which is similar to one used in manufacturing, a builder does not thereby become a manufacturer.

The contentions made by appellant appear to have been considered and rejected by the Supreme Court. In a case which is quite analogous, it was stated: "Both the popular and technical use and meaning of the word 'manufacture' are and have been for centuries at complete variance with that attributed to it by appellant. It is error to say that the signification of the word has been in late times extended or enlarged. What has happened is that a multitude of events, the fruits of invention and the requirements of modern modes of living, have been brought within the old and ordinary sense of the term, and by reason of their manner of making, by machinery or by hand, are recognized and designated as 'manufactured'. There has been but one change and enlargement in the meaning of the word. When machinery began to be a tremendous agency in supplying the needs and luxuries of mankind, the ancient original import of the term—made by hand—was extended to include articles created by machinery as well as by manuel labor, and so the word is currently used today": Commonwealth v. Wark Company, 301 Pa. 150, 154-155.

In that case, the question now before the court was considered at some length, and it was concluded that to hold that a builder was engaged in the manufacture of buildings would be to give the word an unusual and strained meaning, an anomaly not required by custom, common sense or necessity. Consideration of this case leads to the same conclusion.

There is another basis for the decision in the present case. It is to be noted that the ordinance which imposes the mercantile license tax provides the following definition: "(8) *Manufacturer*. Any person who sells goods, wares, and merchandise of his own growth or production": Chapter 19-1001, Code of General Ordinances of the City of Philadelphia. It is well settled that where *"the statute* or *ordinance defines* a word or phrase therein the court is bound thereby": Hughes v. Pittsburgh, 379 Pa. 145, 148.

"'A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question": Sterling v. Philadelphia, 378 Pa. 538, 542.

Therefore, whatever the materials involved, and whatever may be the form of production or operation, in order to come within the definition which binds this determination, there must be the sale of "goods, wares, and merchandise". It does not require extended discussion and analysis of the applicable law to ascertain that the dwelling units which appellant sells are not goods (movable effects or personal chattels), wares (articles of merchandise) and merchandise (commodities). Unquestionably these words refer to personalty. It is sufficient that it is beyond any question that what appellant sells is undoubtedly realty, or real estate, i. e., land and buildings annexed or attached to it. Plainly, it was not contemplated or intended that real property be encompassed within the definition provided in the ordinance. Consequently, since appellant is not a manufacturer and does not sell goods, wares and merchandise, it is not entitled to compute its tax liability by means of the alternative method.

For the foregoing reasons, the appeal is dismissed.