## Commonwealth *v.* Weiland Packing Co., Appellant.

*Taxation—Mercantile tax—Manufacturing corporation—Beef and pork products—Act of May 2, 1899, P. L. 184—"Manufacturing"—Words and phrases.*

1. A corporation engaged in manufacturing, packing and selling beef and pork products at wholesale is liable for a mercantile tax on hams, bacon, pickled meat and hides sold by it.

2. Such products are not changed in form and condition from their original state, and transformed into entirely new substances by the operations of skill and labor in the company's establishment.

3. They are therefore not "manufactured" articles within the meaning of the Act of May 2, 1899, P. L. 184.

4. Manufacturing is the application of labor or skill to material whereby the original article is changed to a new, different and useful article, provided the process is of a kind popularly regarded as manufacture or the product of such process.

Argued January 3, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 122, Jan. T., 1928, by defendant, from judgment of C. P. Chester Co., Aug. T., 1926, No. 81, for plaintiff, on case stated, in suit of Commonwealth v. Weiland Packing Co. Affirmed.

Case stated to determine liability to mercantile tax. Before HAUSE, P. J.

The opinion of the Supreme Court states the facts. Judgment for plaintiff. Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*John Haviland,* for appellant.—The products in question were manufactured, within the meaning of the act: Youndt's App., 4 Pa. D. & C. 282; Consolidated Dressed Beef Case, 245 Pa. 605.

*Guy W. Knauer,* with him *Thomas J. Baldrige,* Attorney General, and *Philip S. Moyer,* Deputy Attorney General, for appellee.—For one to be a manufacturer, he must produce a new article adapted to a new or different use: Com. v. Lowry-Rodgers Co., 279 Pa. 361; Norris Bros. v. Com., 27 Pa. 494.

The mere fact that labor is required, even though skilled, is not sufficient, where such new article is not produced, and the application of labor to the article either by hand or mechanism does not make the product necessarily a manufactured one: Com. v. Beef Co., 242 Pa. 163; Com. v. Quarry Co., 250 Pa. 589; Com. v. Mfg. Co., 265 Pa. 380.

OPINION BY MR. JUSTICE FRAZER, March 12, 1928:

Defendant company, a Pennsylvania corporation, whose place of business is in the Borough of Phoenixville, is engaged in "manufacturing, packing and selling beef and pork products" at wholesale, and its contention here is that the disputed articles enumerated in the case stated as follows: (1) sweet pickled meat, i. e. pickled and dry salt pork; (2) smoked skin hams, smoked regular hams, smoked butts, smoked picnics, smoked rib bacon, smoked boneless bacon and smoked dry cured bacon; and (3) hides and skins, are exempt from assessment for mercantile license tax, because, as it claims, being submitted in the course of preparation for the market to processes, varying with the products,

are consequently "manufactured" articles which the Commonwealth is not entitled to tax under the provisions of the Act of May 2, 1899, section 1, P. L. 184, although not exempt from such taxation under the provisions of the Act of April 22, 1846, section 11, P. L. 489, as interpreted by the first section of the Act of February 27, 1868, P. L. 43. The court below held the products enumerated above not to be manufactured articles. The total sales derived from these three disputed items aggregate for the year 1926 the sum of $1,055,936.59, upon which amount the court below found defendant liable for a mercantile tax and entered judgment for the sum of $651.68, which amount includes an admitted tax of $122.48, from which order this appeal followed.

Counsel agree that the single question for determination here is, which, if any, of the products referred to above are "manufactured"? Appellant claims all products in question here are changed in form and condition from their original state, and, in instances, transformed into entirely new substances by the operations of skill and labor in appellant's establishment. In its contention as to what constitutes a manufactured product it relies particularly on the following definition from 26 Cyc., page 520: "Manufacturing is: (1) the application of labor or skill to material whereby the original article is changed to a new, different and useful article, provided the process is of a kind popularly regarded as manufacture or the product of such process." We find many definitions as to the meaning of the verb "to manufacture," but we accept the one which defendant presents as quite adequate for the purpose of this case. In Commonwealth v. Consolidated Dressed Beef Co., 245 Pa. 605, 607, where the question to be determined was whether defendant corporation was a wholesale vendor of merchandise and, as such, liable for the payment of the mercantile tax, it appearing the company was engaged in the business of purchasing cattle, slaughtering

them, and selling, to dealers, beef and other products obtained from the slaughtered animals. In holding that defendant was a vendor of that class and subject to the tax, this court said: "The defendant buys cattle, which are for it the raw material, and it converts that material into forms and sizes suitable for the market which it supplies and it then sells the material as merchandise, to others who vend and deal at retail in the same products......It subjects the material which it buys to certain manipulations, but these are not such as to properly constitute it a manufacturing corporation."

The elemental meaning of the term "to manufacture," is "to make" (etymologically, to make by hand),—to make and produce something as a new construction out of existing materials. That is the basic sense of the definition quoted above, and its meaning is illustrated with clearness and emphasis in Norris Brothers v. Commonwealth, 27 Pa. 494, 496: "To make, in the mechanical sense, does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. A cunning worker in metals is the maker of the wares he fashions, though he did not dig the ore from the earth, or carry it through every subsequent stage of refinement. A shoemaker is none the less a manufacturer of shoes because he does not also tan the leather. A bureau is made by the cabinet maker, though it consists in part of locks, knobs, and screws, bought ready made from a dealer in hardware." Or, in other words, the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form,

qualities and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged,—a new production been created. This point is illustrated in Hartranft v. Weignann, 121 U. S. 609, where it was held that removing the outer layers of shells by acid and afterwards grinding off the second layer by an emery wheel so as to expose the inner layer was not a manufacture of shells or the production of a new article. In that case the court said: "We are of the opinion that the shells in question here were not manufactured. ......They are still shells. They had not been manufactured into a new and different article, having a distinctive name, character or use from that of a shell. The application of labor to an article, either by nature or by mechanism, does not make the article necessarily a manufactured article within the meaning of the term as used in the tariff laws." In Commonwealth v. Welsh M. M. & Kaolin Mfg. Co., 265 Pa. 380, where a corporation was engaged in crushing and grinding rock into sand colored by the admixture of clay, it was held not to be carrying on a process of manufacture.

In the case before us appellant contends that hams, bacon and hides sold by it are in fact manufactured articles or products, because science, labor and skill have been so applied to the raw materials that "the form and condition thereof have been changed, and in some instances entirely new substances have been made or created for the market, by this process of manufacturing." But we do not find that contention supported in any substantial or sufficient degree by the particularly detailed recitals in the case stated. We do not find there was application of workmanship and skill in the process and method used or in the tangible results of such process and method as to justify the claim that the products in dispute here may properly be taken as manufactured. No change or transformation may be attributed to the products enumerated above, upon the

value of which it is claimed by defendant the Commonwealth is not entitled to impose as assessment of the mercantile license tax.

We may select here the detailed recital in the case stated of the manner and method of preparing and curing hams for the market as inclusively representative and descriptive of all the processes used by appellant and the ultimate results of these processes. We find that what is done preparatory to placing the meat on the market is to cut from the carcass of the slaughtered animal the parts popularly and generally designated as the "hams," and these are submitted for a time to a successive process of pickling or curing in solutions of nitrate of soda, sugar and water, thereafter encased in cotton covering and suspended for the period required in a smokehouse over a fire of hickory wood. And what is the ultimate article when it emerges from this careful treatment, ready for sale to appellant's customers? Just what it was in form, in character and in substance when the treatment was begun on the original article,—a ham, both as to designation and as to use. There has been injected into it salt solutions; otherwise, the original substance is there. There may be a change in coloration, but no special change in form or substance. The treatment given to this meat, instead of constituting a process of manufacture, is really an elaboration of the time-honored method of preparing and curing in the grimy little smokehouse of the farmer. From the moment of its separation from the carcass of the animal, the ham remains constantly intact, it retains practically its original shape and size, and neither the curing solution that is "pumped" into it, nor the solution in which it is steeped, nor the chemical preparation with which it is "scrubbed," nor the ultimate "smoking" applied to it, has done anything more in changing the original meat than to modify its color and taste and prevent deterioration and decay; and the purpose and use for which it

was originally cut from the carcass as a ham is exactly the same,—to be used as food. In like manner, the recital in the case stated of the methods by which bacon and pickled and dry salt pork are treated to prepare and cure them for the market comprises a similar use of solutions and final smoking; and, in the matter of skins taken from the animals, these are scraped and soaked in salt, remaining what they were originally,— untanned skins. The methods, labor and skill which actual manufacturing require are here wholly absent. We find no application of labor or skill whereby the original article has been changed to a new and different substance to be put to a use not intended for the original. The court, in People ex rel. Meat Co. v. Roberts, 155 N. Y. 408, a somewhat similar case, said: "The business conducted by the relator was obviously that of purchasing, slaughtering and selling sheep and lambs. While it utilized the hides, the wool, the tallow and the offal, as well as the carcasses of these animals, yet to say that refrigerated mutton, rendered tallow, pulled wool or untanned hides are manufactured articles would be quite incorrect......At most, they were merely prepared for market and preserved until sold." To constitute a making of a manufactured product, it is essential that the article which emerges should not be the same, but a new and different production (In re Rheinstrom & Sons Co., 207 Fed. 119) ; and the article in its changed form must be adapted to a different use and purpose than was the original before alterations were made: Lexington v. Lexington Leader Co., 193 Ky. 107. In the present case neither the process followed, nor the results attained, nor both combined, are such as to constitute the making or manufacturing of new and different articles from the meats that appellant took from the slaughtered animals, nor was the intended use of these cured and prepared products different from that intended for the originals,—their use as food.

Our review of the case and the decisions lead us to the conclusion reached by the court below.

The assignments of error are overruled and the judgment affirmed.