## Commonwealth *v.* Wark Co., Appellant.

Argued May 27, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Geo. Ross Hull*, of *Snyder, Miller & Hull*, for appellant.—The appellant is engaged in manufacturing: Com. v. Bridge Co., 156 Pa. 500, 507; Com. v. Swindle & Bros., 22 Dauphin Co. R. 184; Com. v. Paving & Construction Co., 229 Pa. 231; Com. v. Paving & Construction Co., 12 Dauphin Co. R. 57; Com. v. Casing Co., 50 Pa. C. C. R. 146.

*Philip S. Moyer*, Deputy Attorney General, and *Cyrus E. Woods*, Attorney General, for appellee, were not heard.

Opinion by Mr. Justice Frazer, June 21, 1930:

The Commonwealth by its accounting officers settled an account for tax on capital stock for the year ending December 31, 1926, against defendant company, amounting to $3,074.37, from which settlement the corporation appealed to the Court of Common Pleas of Dauphin County on the ground that it was a "manufacturing" corporation within the meaning of that term as used in the Act of July 22, 1913, P. L. 903, amending section 21 of the Act of June 1, 1889, P. L. 420, which imposes a tax on the actual value of the whole capital stock of every corporation liable to tax subject to the following proviso:

"That the provisions of this section shall not apply to the taxation of the capital stock of corporations...... organized for laundering or manufacturing purposes, which is invested in and actually and exclusively employed in, carrying on laundering or manufacturing within the State, ......but every laundering or manufacturing corporation......shall pay the state tax of five mills herein provided, upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to its laundering or manufacturing business, ......it being the object of this proviso to relieve from state taxation only so much of the capital stock as is invested purely in the laundering or manufacturing plant and business."

The case was tried without a jury, and the court found in favor of and entered judgment for the Commonwealth in the amount of the tax claim. Defendant appealed.

Appellant argues that, by reason of the nature and operation of its business, that of constructing and erecting buildings on contracts, it is a manufacturing concern within the meaning of the proviso of the act above quoted and accordingly exempt from a tax on its capital stock. The Commonwealth contends that defendant corporation is solely a construction organization and is

not engaged in the business of manufacturing, consequently is not included within the proviso and as stated by the learned court below, "the single question is whether the building of houses is 'manufacturing' within the purview of this statute." Language contained in legislative enactments intended to relieve persons or corporations from taxation must be strictly construed: Commonwealth v. Lowry-Rodgers Company, 279 Pa. 361.

Defendant company was incorporated in 1917, "for the purpose of carrying on the business of contractors and general building construction in any of its branches." In 1926 it procured an amendment to its chartered purposes as follows: "Said corporation is formed for the purpose of manufacturing and dealing in builders' supplies, material and equipment of every description, the manufacture of buildings and structures therefrom, and the carrying on of the business of contractors and general building construction in all the various branches thereof." Unquestionably under the original charter, there could be no escape from the tax imposed under the Act of 1889 and its amendment. It did not then profess to be engaged in a manufacturing business. Defendant's contention now is that the words in the amended charter, "the manufacture of buildings and structures," entitle it to exemption under the above quoted proviso.

During the tax year in question appellant was engaged in the construction of approximately twenty buildings, varying from one to sixteen stories in height, including structures for business, apartment, hotel and hospital purposes, the cost of construction of the respective buildings varying from approximately $7,000 to more than two million dollars. We are asked to declare that the construction and erection of these buildings was a "manufacturing business," within the legislative intent as expressed in the Act of 1889.

It is to be noted that the act referred to particularly provides that, "it being the object of this proviso to

relieve from state taxation only so much of the capital stock as is invested purely in......manufacturing plant and business." The record fails to disclose that defendant manufactured any portion of the materials entering into its construction contracts. It was accordingly not a manufacturing company in that respect; the materials used in such constructions were supplied by others who were the actual manufacturers. The array presented by counsel of definitions of the word "manufacture" is indeed imposing; but we do not deem it essential, in the disposition of this appeal, to here travel over that wide range. We shall not enlarge the accumulation, particularly because, in our examination of judicial deliverances on this subject of our own and other jurisdictions, the question has in the end rested upon and been solved by a reliance upon the ancient and safe rule, to which this court has always adhered, that words in a legislative enactment are to be taken in their ordinary and general sense; and unless the act sufficiently explains or qualifies the terms so as to necessitate an interpretation out of the current and popular signification, they must be deemed to have been used by the legislature in the former sense.

Both the popular and technical use and meaning of the word "manufacture" are and have been for centuries at complete variance with that attributed to it by appellant. It is error to say that the signification of the word has been in late times extended or enlarged. What has happened is that a multitude of events, the fruits of invention and the requirements of modern modes of living, have been brought within the old and ordinary sense of the term, and by reason of their manner of making, by machinery or by hand, are recognized and designated as "manufactured." There has been but one change and enlargement in the meaning of the word. When machinery began to be a tremendous agency in supplying the needs and luxuries of mankind, the ancient original import of the term—made by hand—was

extended to include articles created by machinery as well as by manual labor, and so the word is currently used today.

The learned court below says: "An extended search has revealed no case construing 'manufacture' as applied to the construction of a building, outside of interpretations of the Bankrupt Law in the Federal Courts, and there the cases are in conflict." It would be strange to find otherwise; for the courts are not prone to indulge in or to accept unusual, strained or unauthorized interpretations of the terms of a law; and anyone would experience considerable difficulty in adopting, in writing or speech, an unusual meaning of a word long in common and ordinary use, and which use neither the people nor the courts nor legislative bodies have at any time discarded or changed. The plain difficulty of departing from the popular and ordinary meaning of the word "manufacture" is strikingly proved In re Rutland Realty Company, 157 Fed. 296, where the court in construing the Bankrupt Law seems to have decided that a house erected was a house manufactured within the provisions of that law. There, however, the learned court in its opinion did not venture to use the word "manufacture" in that sense. It said houses are "built"; and on page 296: "Acting under this principle, I understand the allegation of the petition to mean that the alleged bankrupt did not build its own house, but built, or tried to build, or intended to build, houses generally," and, on page 297, cited with evident approval People v. N. Y. Dry Dock Co., 92 N. Y. Court of Appeals 487, in which it was said "house building is something that would not come within the term manufacture." We have with some labor examined numerous reports by authoritative writers on modern economics and industries, and nowhere in them have we found the slightest indication of a departure from the ordinary and usual meaning of the word "manufacture." In these reports a house is invariably either "built,"

"constructed," or "erected." In none of them is a building "manufactured." We may take, for example, 19 U. S. Industrial Committee Report, where it is said on page 511, "According to these tables new textile mills have been constructed from year to year,...... the increase in the number of silk mills constructed is especially striking." It is helpful to notice in this quotation an important implied differentiation: It is the textile and silk mills that are "constructed"; not the fabrics made or manufactured therein. It is not within the province of a court of law to recognize affirmatively and adopt judicially a new and unusual limitation, extension or modification of the meaning of a word in a statute which is of common usage, inwrought for centuries into our language, to apply it to a matter or situation where neither custom, common sense nor necessity requires or authorizes such application. The clause in defendant company's charter which reads "manufacture of buildings" is an anomaly, which no standard dictionary of our language has ever accepted, and which ordinary popular usage has never sanctioned. We may certainly assume that the legislature in using the word "manufacturing" in the Act of 1889 and its amendment had no thought of oddities or strained meanings; and no accepted rule of interpretation supports the idea that a court of law may attribute a meaning to a word in a statute, when there is nothing to show or indicate that such meaning was intended by the legislature that enacted the law.

The learned court below and counsel for the respective parties have ranged widely and wisely among the cases bearing on this subject. We however have one other in mind, Franklin Fire Ins. Company v. Brock, 57 Pa. 74, of particular application here, where the question involved was payment of fire insurance compensation on a policy which did not cover certain risks, as insurance on "mills and manufactories of any kind." The issue involved the question, what did the parties

understand by the latter words? The court answered it in terms simple but strikingly accurate and penetrating in thought and logical conclusion, saying (page 80) : "The collocation of the words in this condition [in the policy] is of considerable weight in determining what the parties meant. Not only are the kinds of manufacturing business excepted from the policy named, but the real estate excepted is called 'mills and manufactories.' This would seem to indicate what was in the minds of the parties, mills and manufactories, something known, recognized, called a mill (not merely a place where something might be ground), but what common usage recognizes as a mill. A manufactory (not merely a place where something may be made by hand or machinery), but what in common understanding is known as a factory." Following this sensible reasoning, we may say that the legislature in using, in the Act of 1889, the words "manufacturing purposes" and "manufacturing business," did not mean, by the first expression, merely the purpose of manufacturing, nor, by the second, merely the business of manufacturing, but intended what in ordinary and general usage are currently known and understood as manufacturing purpose and manufacturing business.

We have not thought necessary, in disposing of this case, to plunge into the wide-reaching sea of discussion and definitions as to the term "manufacture."

As the record shows, defendant company has no plant of its own where it manufactures any of the articles or materials used in the construction of the buildings it erects under contract, nor does it, apparently, build structures on land which it owns, thus furnishing no ground in that respect for claiming the statute applies: Columbia Ironworks v. National Lead Company, 127 Fed. 99. A construction corporation, in the sense of doing construction work, such as erecting buildings, is an organization clearly distinguished from a corporation organized for and engaged in producing articles

of commerce, and the word "manufacturing," by no natural meaning, should include the former class: In re MacNichol Construction Co., 134 Fed. 979.

The judgment of the court below is affirmed.