## Commonwealth, Appellant, *v.* McCrady-Rodgers Company.

156

Argued May 21, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Philip S. Moyer,* Deputy Attorney General, with him *Wm. A. Schnader,* Attorney General, for appellant.

*R. A. McCrady,* of *McCrady, McClure, Nicklas & Hirschfield,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1934:

The court below held that the process of making concrete by placing measured amounts of dry materials into a mixer, revolving the dry mass until thoroughly mixed, and then, while it is in motion, adding a measured amount of water to bring the mixture to a plastic state, all for the purpose of selling as a commercial article, is manufacturing, and capital employed therein is exempt from taxation under the provisions in the Capital Stock Tax Acts. The Commonwealth appeals.

The taxing statute in force during the year, 1931, was the Act of June 1, 1889, P. L. 420, as amended in 1913, P. L. 903, and 1929, P. L. 657; it is under these acts exemption is claimed. They provide for an exemption from state taxes of capital employed in manufacturing purposes. Tax exemption provisions must be strictly construed; and the burden is on the corporation or party making the claim to prove the right and the part of its capital used in manufacturing.

The Commonwealth charged that appellee was not a manufacturing corporation. Among the purposes for which appellee was incorporated was that of the "manufacturing of......concrete." The proof shows it exercised that right as an important part of its business in which a large part of its capital was employed; so much of it that such undertaking could not be considered as a mere incident of its main business. The Commonwealth contends that the process employed or the work actually done was not manufacturing within the terms of the act.

The mere fact that a company may have as one or all of its chartered purposes the right to "manufacture" a given article, such fact, standing alone, will not entitle it to an exemption from a state tax unless the capital for which exemption is sought is actually engaged in manufacturing and the article manufactured is sold by it as an article of commerce. If such company is engaged in a general business not recognized by law as manufacturing, and its chartered powers give it the right to "manufacture" and such company engages in manufacturing, but confines the use of the product made to its own general business, the capital so employed would not be exempt since the product is not sold as an article of commerce by that company. A company is not entitled to exemption if the thing manufactured is an incident of its general business which is not manufacturing.

Appellee owns a plant consisting of buildings containing bins, scales, and other equipment, including traveling mixers, all of which are used in making concrete.

The company is engaged generally in the business of selling ready-mixed concrete or transient-mixed concrete to any one wishing to purchase it. The process is as follows: raw materials, consisting of cement, sand, gravel, and coarse aggregate, are stored in large bins. From these bins the coarse aggregate, that is, crushed stone, cinders, etc., in varying amounts is poured into a hopper and weighed; a separate hopper weighs the cement necessary to complete the mixture. These materials are then "fed" into a mixer which is in motion, so that the stone, sand, and cement are thoroughly mixed dry. When so mixed, and while the mixer is revolving, a measured amount of water, sufficient to make the mass plastic, is added; when the contents reach the plastic state it is concrete, or what is known as "ready-mixed concrete." This is then delivered to the purchasers. The mix is always in the proportion specified by the purchaser, it varies, it may be one or more parts cement, two or more of sand, and three or more of crushed stone, or slag or cinders, etc. These proportions may further vary.

It is contended that as the concrete reached the purchaser in its plastic form, without shape, the mass as delivered was not a manufactured commodity; the process to this point was not manufacturing in its popular sense. It is conceded that if it had been permitted to harden by the ordinary process of nature into some merchantable form, the process would have been manufacturing.

It has been well stated that it is sometimes difficult to determine with legal exactness what is and what is not manufacturing, or what part of a business or plant may be so engaged. It has been held that a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use: Hartranft v. Wiegmann, 121 U. S. 609; Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Welsh Mountain Mining & Kaolin Mfg. Co., 265 Pa. 380; or that manufacturing is the application of labor or skill to materials

whereby the original articles are changed to a new, different and useful article: Com. v. Weiland Packing Co., 292 Pa. 447.

Concrete is artificial stone. It is a product resulting from a combination of sand or gravel or broken bits of limestone, with water and cement; a combination which requires the use of skill and most generally of machinery. Concrete in forms designed for use and supplied to others for buildings, bridges and other structures, is a distinct article of commerce and the making of them would be manufacturing by the corporation doing so: Friday v. Hall & Kaul Co., 216 U. S. 449, 455. We held in Com. v. Filbert Paving & Cons. Co., 229 Pa. 231, that making asphalt and cement pavements, roadways, and structural concrete, was manufacturing. Concrete in its plastic state is just as much manufacturing as concrete hardened by the processes of nature. The making of concrete in plastic form fills all the requisites of the definition of manufacturing. Everything has been added, and every act has been performed that is necessary to make concrete when in plastic form. When this is done, the elements of the mix are entirely changed; the product is artificial rock. It hardens quickly by natural processes and whether in the form of paving or building block, hardening is incidental to the process; it follows the process inevitably. The process, that is, bringing the different elements to the point where they will harden, is manufacturing just as the placing of the several ingredients in a barrel for aging is the making of whiskey. The person or corporation purchasing concrete and placing it in an abutment, mould or other form or place for hardening does not manufacture. The distinction the Commonwealth seeks to make, that the processes of hardening must be invoked before there can be manufacturing, is too narrow.

The sale of ready-mixed concrete, by concerns chartered for that purpose, to any one desiring it, is the sale of an article of commerce. To-day large companies en-

gage in the business of selling the concrete in plastic form to persons or corporations engaged in road building, large structural work, and other construction businesses. It is placed by the purchasers in the form desired for hardening, and, as stated, the latter act alone is not manufacturing. It is immaterial that the making, sale and delivery is at the "work." This requirement is part of the commercialism of the article and is so because of the difficulties of transportation and quick hardening of the substance.

Appellant relies on Com. v. Wark Co., 301 Pa. 150, to support its contention that the making of concrete is not manufacturing. That case decided that a corporation engaged in construction and erecting buildings is not employed in manufacturing. If that company, though chartered to manufacture, made concrete for abutments and piers as an incident to its general business of a builder, it would not, in so doing, be engaged in manufacturing. In Com. v. Welsh Mountain Mining & Kaolin Mfg. Co., supra, we held that crushing silica rock into various grades and adding various shades of clay to color the rock, was not manufacturing. The product was still silica rock. Also in Com. v. Glendora Products Co., 297 Pa. 305, where we held that roasting coffee was not manufacturing, the finished product remained coffee. Neither were new or different articles.

Here we have three main ingredients, which in their natural state are vastly different from the finished product. Great buildings are erected from this mixture, railroad bridges are constructed, and great dams block our rivers, all built of concrete; the mixture is just as much the product of manufacturing as are the steel beams delivered for erection in place.

Judgment affirmed.