## Pittsburgh, Appellant, v. Electric Welding Company.

Argued October 1, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Regis C. Nairn,* Assistant City Solicitor, with him, *Marcus Aaron, II,* and *J. Frank McKenna, Jr.,* City Solicitor, for appellant.

*James D. Wills,* with him *Miller, Hay & Entwisle,* for appellee.

Opinion by Mr. Chief Justice Jones, November 10, 1958:

The City of Pittsburgh, acting by its treasurer, appeals from the order of the court below sustaining the Electric Welding Company's appeal from a mercantile license tax assessment, with penalties, on the ground that the company's business operations constituted manufacturing and that, consequently, it was not liable for the tax.

By ordinance No. 488 of December 1, 1947, as amended, the city imposed an annual mercantile license tax on persons engaged in the occupation or business of vending or dealing in goods, wares and merchandise with the proviso, however, that the terms "dealer in" or "vendor of goods, wares and merchandise" were not to be taken as including vendors of or dealers in articles of their own manufacture.

A companion case involving the similar tax of the Pittsburgh School District, where the material facts are identical with the facts of the instant case, was heard and decided by the court below together with this case and with like result. The School District appealed its case to the Superior Court which held that the Electric Welding Company's income was derived from manufacturing and that, therefore, it was not liable for

the mercantile license tax. See *Electric Welding Company v. Pittsburgh School District*, 186 Pa. Superior Ct. 243, 142 A. 2d 433. Our study of the present record leads us, however, to the opposite conclusion, viz., that the goods, wares and merchandise, here in issue, which the Electric Welding Company deals in or vends are not of its own manufacture and that, accordingly, it is liable for the mercantile license tax on that portion of its business.

The operations of the company fall into five general classifications, as follows: (1) wire mesh, (2) load transfer units, (3) concrete reinforcing bars, (4) column spirals, and (5) special reinforcing assemblies. It is only the last three classes with which we are here concerned. The City has heretofore conceded that the production of load transfer units, (2) above, constitutes manufacturing, while the company has likewise conceded that its wire mesh operation, (1) above, is not in any way connected with manufacturing. The question then is whether the company's operations coming under classifications, (3), (4) and (5) above, constitute manufacturing.

The concrete reinforcing bars are used in the construction of highways, buildings, bridges, etc., in which concrete constitutes a considerable part of the structure. As used in the construction, the reinforcing bars are arranged in place and concrete is then poured around them. Thus, they become integrated with and give additional strength to the structure. The company purchases from the producers steel rods of various sizes, cuts them to desired lengths and then bends or twists them to suit the specific reinforcing purpose for which use the rods are then sold by the company to the construction contractor.

Column spirals are used in concrete building and bridge pier construction to reinforce the columns and

piers which support the superstructure. The company purchases mill coils of steel rods which it straightens and recoils to a desired diameter and pitch of the coil. Steel channels are then tack-welded to the spiral, thus coiled by the company, for the purpose of giving it stability. After the steel spiral has been set in place the contractor pours concrete around it and the spiral becomes an integral part of the completed structure.

Special reinforcing assemblies are the type of products which the company is called upon by a building contractor to design specifically for the purpose of strengthening concrete. Examples of special assemblies are trusses and pile cages. Trusses are the metal materials which are laid horizontally between two beams of a building, under construction, to support a concrete floor. Pile cages are steel rods sunk into the ground in a circular pattern at the point where the piers of a bridge are to be located. After concrete is poured into the forms around the pile cages the structure becomes a support for the bridge pier which will be constructed upon it. The operations required to make a special assembly depend necessarily and exclusively upon the design of the desired product.

The word "manufacture", as used in a legislative enactment is to be given its ordinary and general meaning: *Rieck-McJunkin Dairy Company v. Pittsburgh School District*, 362 Pa. 13, 18, 66 A. 2d 295. In *Commonwealth v. Weiland Packing Co.*, 292 Pa. 447, 450-451, 141 A. 148, it was said that ". . . the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form, qualities and adaptability in use, quite different from

the originals, it cannot properly and with reason be held that a new article or object has emerged,—a new production been created."

In discussing decaffeinated and instant coffee, tapioca and certain canned products, it was recently said in *General Foods Corporation v. Pittsburgh*, 383 Pa. 244, 251-252, 118 A. 2d 572, that, "None of those articles is a manufactured product, not having gone through a substantial transformation in form, qualities, and adaptability in use from the original material so that a new article or creation has emerged: Commonwealth v. Weiland Packing Co., 292 Pa. 447, 141 A. 148; Rieck-McJunkin Dairy Co. v. Pittsburgh School District, 362 Pa. 13, 66 A. 2d 295; Armour & Co. v. Pittsburgh, 363 Pa. 109, 69 A. 2d 405." In *Commonwealth v. McCrady-Rodgers Company*, 316 Pa. 155, 158-159, 174 A. 395, the court recognized that "It has been held that a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use: . . . or that manufacturing is the application of labor or skill to materials whereby the original articles are changed to a new, different and useful article . . . ."

The operations of the Electric Welding Company do not result in any well signalized or substantial transformation in the form or quality of the steel materials which it buys from the producers and resells with a twist or bend to its customers. The changes which the company makes in the steel rods or coils which it purchases are purely superficial. In the case of the concrete reinforcing bars the company shears the steel rods to a specified length and bends or twists them into the desired shape. In preparing column spirals and special assemblies, the company performs similar operations. It straightens and recoils the steel and then makes its assembly operations either manu-

ally or by tack-welding. In each instance, the final article is the same which the company originally purchased except for slight changes in shape or length and for certain types of minor assembly work. In the words of the company's President—"The Electric Welding Company is in the business of engineering and the application of certain supporting plant operations to steel materials to produce concrete reinforcement steel products."

The various assembly operations which the company performs are insufficient to transform it into a manufacturing concern. We have heretofore held that the building, construction and erection of houses and other buildings is not manufacturing: *Commonwealth v. Wark Co.*, 301 Pa. 150, 155-156, 151 A. 786. It is equally clear that the assembling of column spirals and special reinforcing assemblies, as performed by the company, is not included within the popular conception of the meaning of the word manufacturing.

The order of the court below sustaining the Electric Welding Company's appeals from the tax assessments in question is reversed and the record remanded with directions that the tax appeals be dismissed.