## Lape v. Gabler

*Hugh J. Lane* and *Richard D. Cicchetti,* for plaintiffs.

*Ray, Buck, John & Hook,* for defendants.

BANE, P. J., August 19, 1966.—. . . The issue here raised is simple and arises because one homeowner seeks to beautify his property and a nearby neighbor disagreed with the effort. The area is essentially residential and attractive in appearance. Extended cove-

nants and restrictions run with the land, and were designed and intended to keep the area attractive. Plaintiffs herein assert that the alleged fence erected by defendants violates the provisions of restrictive covenant no. 10, which provides that "No fence of manufactured materials shall be erected upon the front of said lots. . . ." Defendants have countered with the assertion that a rail fence, composed of natural chestnut wood, is not a fence of "manufactured materials".

The intervening plaintiff, Gilbert R. Morrow, one of the creators of High Hills plan of lots, while admitting defendants' fence is "pretty", asserts with vigor that the declaration of covenants and restrictions must be enforced. He reaffirms the intent that the declaration was designed to keep the plan looking nice and to maintain property values. He further stated that, if he were writing restriction no. 10 again, he would phrase it exactly as it is. It is thus apparent that, in his judgment, any fence that is not constructed of "growing plants" is a manufactured fence. Unfortunately for his opinion, it appears that our appellate courts do not agree with this view.

In Commonwealth v. McGrady-Rodgers Company, 316 Pa. 155, our Supreme Court said: "It has been well stated that it is sometimes difficult to determine with legal exactness what is and what is not manufacturing, or what part of a business or plant may be so engaged. It has been held that a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use: Hartranft v. Wiegmann, 121 U. S. 609; Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Welsh Mountain Mining & Kaolin Mfg. Co., 265 Pa. 380; or that manufacturing is the application of labor or skill to materials whereby the original articles are changed to a new, different and useful article: Com. v. Weiland Packing Co., 292 Pa. 447".

This view was reaffirmed in Commonwealth v. Peerless Paper Specialty, Inc., 344 Pa. 283, as follows:

"In discussing the meaning of the word 'manufacturing,' this Court said, in the early case of Norris Brothers v. The Commonwealth, 27 Pa. 494, 496: 'It is making. To *make* in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process.' In elaborating upon this definition, it was said in Commonwealth v. Weiland Packing Co., 292 Pa. 447, 450: '. . . the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges.' We said in Com. v. McGrady-Rodgers Co., 316 Pa. 155, 158, in which an exemption was sustained for appellee on the ground that it was engaged in manufacturing, '. . . a thing is a manufactured article when the product is a new and different article with a distinctive name, character or use; . . . manufacturing is the application of labor or skill to materials whereby the original articles are changed to a new, different and useful article . . .' The basic principle is that a new product is made out of existing materials: Commonwealth v. Weiland Packing Co., supra, at p. 450; Commonwealth v. Lowry-Rodgers Co., 279 Pa. 361, 365; Norris Brothers v. The Commonwealth, supra, at p. 496".

In the case of General Foods Corporation v. Pittsburgh, 383 Pa. 244, we note the following: "As to both the City and the School District plaintiff is therefore entitled to exemption on all the products manufactured by it, wherever sold or from whatever point shipped. But its contention that such exemption should

be applied to decaffeinated and instant coffee, tapioca, and certain canned products must be rejected. None of those articles is a manufactured product, not having gone through a substantial transformation in form, qualities, and adaptability in use from the original material so that a new article or creation has emerged: Commonwealth v. Weiland Packing Co., 292 Pa. 447, 141 A. 148; Rieck-McJunkin Dairy Co. v. Pittsburgh School District, 362 Pa. 13, 66 A. 2d 295; Armour & Co. v. Pittsburgh, 363 Pa. 109, 69 A. 2d 405".

Finally, in Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361, the court said: " 'Manufacturing' as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 Atl. 148 (1928) ; Pittsburgh v. Electric Welding Co., 394 Pa. 60, 145 A. 2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A.2d 572 (1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production: Commonwealth v. Weiland, supra; Pittsburgh v. Electric Welding Co., supra.

"The final piece of equipment which this company sells is but a product transformed from pre-fabricated units into an assembled whole. It is merely a combination of the parts fashioned together. From this superficial change, no new product emerges. The situation is analogous to that of a building contractor whose ma-

terials are manufactured by others, a situation which this Court has held not to be that of a manufacturer. Commonwealth v. Wark Co., 301 Pa. 150, 151 Atl. 786 (1930)".

When the foregoing tests are applied to the instant case, the conclusion is clear that the alleged "fence" is not a fence of manufactured materials. Care, skill and labor may have been bestowed upon the chestnut rails and posts in the construction of the fence, but the end product has not gone through a substantial transformation in form, qualities and adaptability in use from the original material so that a new article or creation has emerged. Mr. Morrow could simply have said "No fence of any material, save only growing plants, shall be erected", etc. His purpose and intent are clear, but he did not so provide in the declaration. His positive and adamant assertion that restriction no. 10 is written exactly as he intended it to be written leaves us no alternative but to refuse the requested relief. . . .

### DECREE NISI

And now, August 19, 1966, upon consideration of the foregoing case, it is ordered, adjudged and decreed that plaintiffs' request for a perpetual injunction against defendants be and the same is hereby refused, and the action is dismissed.