## Bindex Corp. v. City of Pittsburgh

*Carl E. Glock, Jr.*, for plaintiff.
*Grace S. Harris*, for defendant.

SILVESTRI, *J.*, February 7, 1982—Pursuant to the Local Tax Enabling Act,[1] the City of Pittsburgh, herein city, by Ordinance no. 675 of 1978, as amended by Ordinance no. 594 of 1970 and no. 1 of 1975,[2] enacted a business privilege tax of five mills on each dollar of the gross annual receipts of a business. The city assessed Bindex Corporation, herein Bindex, for business privilege taxes for the years from 1976 through 1980.[3] The city did not grant an ad-

---

1. The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, as amended, §2, 53 P.S. §6901, et seq., authorizes the city to "levy, assess and collect" taxes upon "persons, transactions, occupations, privileges, subjects and personal property."

2. The Pittsburgh Code of Ordinances, Title Two, Article VII, Chapter 243.

3. The business privilege tax statements for assessments, attached as Exhibits A-2 through A-6 to the plaintiff's complaint, indicate the tax, including penalty and interest for the year 1976 was $1,410.44; for the year 1977—$3,919.81; for the year 1978—$3,299.87; for the year 1979—$3,155.34; for the year 1980—$3,177.54, resulting in a total of $14,962.99. Plaintiff's Exhibit A-1, however, states the total of the assessments, in-

ministrative hearing to Bindex on the assessment by reason of its prior determination on a similar case that the assessment was proper.

Bindex filed the statutory appeal from the City's tax assessment, which is now before this court for disposition.[4] Bindex contends it is a manufacturer and that its receipts from its binding and laminating processes are exempt from the tax assessed by the City under Section 2(4) of the Local Tax Enabling Act, 53 P.S. § 7902(4).[5] Section 2(4) provides:

"[L]ocal authorities shall not have authority by virtue of this act:

. . .

(4) To levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture . . . or on any privilege, act or transaction related to the business of manufacturing . . . by manufacturers . . . with respect to the goods, articles and products of their own manufacture. . . ."

The sole issue involved in this case is whether or not the binding and laminating processes of Bindex, detailed infra, are "manufacturing" under § 2(4) of the Local Tax Enabling Act.

The term "manufacturing" is not defined by the act itself; however, " '[m]anufacturing' as used in a legislative enactment is given its ordinary and general meaning." Philadelphia School District v. Par-

cluding penalty and interest, amounts to $14,982.99. The disparity, however, is of no significance in light of the order of this court.

4. Bindex also makes looseleaf binders; however, the receipts from this part of its operations were excluded from the assessment by the City.

5. Bindex in its claim for relief requests equitable and declaratory relief; however, this is not properly before us.

ent Metal Products, Inc., 402 Pa. 361, 364, 167 A. 2d 257 (1961). The roots of its "ordinary and general meaning" are found in the Pennsylvania Supreme Court's decision in Norris Brothers v. Com., 27 Pa. 494, (1856), in which the court stated:

" . . . But what is manufacturing? It is making. To *make* in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities or new combinations to matter which has already gone through some other artificial process."

The Supreme Court's definition has been expanded by developing case law and the expounded definition of "manufacturing" has been cited by each of the parties to support its position in the instant action. Indeed, the judicial interpretation of the "ordinary and general meaning" of manufacturing has become a litany. In Com. v. Deitch, 449 Pa. 88, 293 A. 2d 834 (1972), the Supreme Court set forth the oft-cited interpretation of the term:

" . . . It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 Atl. 148 (1928). Pittsburgh v. Electric Welding Company, 394 Pa. 60, 145 A. 2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A. 2d 572 (1955). If there is merely a superficial change in the original materials without any substantial

and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production: Commonwealth v. Weiland, supra; Pittsburgh v. Electric Welding Co., supra.' "

Bindex asserts there is a transformation of qualities and adaptabilities in use, which is accomplished by the operations it performs, and that different products are created. The type of business in which Bindex engages is finisher to the printing industry, i.e. trade bindery. Typically, Bindex is supplied flat, *printed* sheets, which vary in size depending on the size of the product from the printer; the printed material is arranged on both sides of a sheet so that the pages will fall in consecutive order when folded.[6] Bindex folds the flat press sheets, gathering the folded material into sections.[7] The folded sheets are trimmed, i.e., the edges which were folded are cut off. The methods employed to bind the pages vary. Thus, a job may involve scoring (folding), dye cutting,[8] drilling, gluing and a final folding. The printed materials may include "pockets", i.e., space to include inserts and foldouts; the foldout materials are included in the flat sheets and the pockets are also made from the materials provided by a printer.

Bindex submits that the physical shape, form, qualities and utility of the printed flat sheets are changed significantly by the bindery operations. Although it is evident that there is a transformation in the shape of the printed materials, we cannot

6. Bindex may also receive a layout on which the material on a sheet is identical, i.e., the same page on the same sheet. This layout appears when different colored stock is to be used.

7. The flat sheet, once folded, is referred to as a signature.

8. Dye cutting is done whenever cutting involves an irregular shape; dye cut index tabs used in printed materials are also received in flat sheets from a printer.

agree that the qualities and utility of the materials has undergone the *substantial* transformation envisioned by the judicial definition of "manufacturing." As this court stated in City of Pittsburgh v. Hanlon-Gregory Galvanizing Company, no. 3132 July term, 1974, (February 15, 1977), at 4:

"The myriad of cases in Pennsylvania which have addressed the question of whether a particular activity is manufacturing, absent a legislative definition, have one cardinal feature, i.e., a new and different product must emerge from the activity; absent a new and different product the activity is not deemed to be manufacturing."

We conclude that Bindex's binding process does not result in a new and different product—after binding, the compiled printed material is presented in the order supplied by the author and printer. The printed material is the product; the change in size and the fastening of the materials is a process of *assembling* the sheets; it is not a manufacturing process. Although the utility of the product is enhanced by improving readability, the use and function of the material have not changed in any way.

Bindex argues the city has created a paradox in conceding that making ring binders is manufacturing,[9] stating that the city's position that a product made from unprinted materials is manufactured, but that a product made from printed material is not manufactured is inconsistent. Bindex's argument is inapplicable as it overlooks the facts that the function of a product consisting of printed materials and the use made of the printed material by a customer are limited by the materials themselves; whereas, the function and use of a ring

---

9. An exclusion has been granted by the city to Bindex for book binders.

binder are not defined at the time the raw materials are supplied to or by the trade bindery. The substance and composition of the printed materials are manufactured by the printer—the subsequent change by the bindery is one of form and not of substance—i.e., a new product does emerge. This is not true of the raw materials used to make the ring binders which have no definite form or substance until the operations of Bindex are performed.

The printing of the materials is manufacturing; however, the folding, trimming and binding of the printed materials is not. Although more than one person or corporation can be engaged in the manufacturing of a single article and thus more than one person or corporation, otherwise subject to a business privilege tax, may not be subject to the tax because they are both manufacturers of the article. "It does not follow, however, that every person associated with the making of a product is a manufacturer." Hazen Engineering Co. v. Pittsburgh, 189 Pa. Super. 531, 539, 51 A. 2d 855 (1959).

Bindex also performs a laminating process upon photographs or other articles supplied by its customers. an example of this process was described as follows:

"We received photographs, five, and they were to be arranged in a pleasant way for people to see. Then we took the photographs, put the photographs on a piece of black vinyl. Then put the photographs on the vinyl with pieces of gold paper behind each photograph to set them off. Vinyl was placed overtop. This was put into a huge press. Under approximately twenty ton of pressure, with heat. Under the pressure and the heat the vinyls are fused together around the pictures. That will preserve and protect

the pictures. That lamination is mounted to the board. The board then is beveled on its edges. Gold paint is applied to match to the gold around the photographs. Easel is put on the back." (Transcript 46-47).

The use for the photographs or other articles has not changed. The lamination process is a superficial covering of the articles without any substantial and well-signalized transformation in form, qualities and adaptablility of the articles. The lamination process is not manufacturing.

Bindex maintains that its investment in expensive equipment and its skilled labor necessary to the operations described above should be an important factor in determining whether or not it is a manufacturer. The Supreme Court in Com. v. Deitch, Co., supra, stated at 99:

"The application of labor to materials and the sophisticated nature of the operation are factors to be considered but are not in themselves determinative of whether a corporation is engaged in manufacturing in a legal sense. As the opinion of the Court in Armour & Co. v. Pittsburgh, 363 Pa. 109, 116, 69 A. 2d 405 (1949) observed: 'Nor is it of legal significance in this connection that the operations thus conducted require large and extensive plants and organizations, trained men and intricate machinery, for even though the labor be skilled, the operations delicate, a large plant involved, and expensive machinery utilized, such factors, neither individually nor collectively, convert what is essentially a mere processing operation into a manufacturing one: cf. Rieck-McJunkin Dairy Co. v. Pittsburgh School District, 362 Pa. 13, 23, 66 A. 2d 295, 299.' "

An order in the amounts agreed to by the parties will be entered in favor of the City.[10]

### ORDER

And now, February 7, 1982, after a hearing and upon consideration of the briefs of the parties, it is hereby ordered that the appeal of Bindex Corporation from the assessments of the City of Pittsburgh for business privilege taxes for the years from 1976 through 1980 is hereby dismissed. It is further ordered that Bindex Corporation pay the business privilege taxes for the years 1976 through 1980 agreed upon by the parties plus penalty and interest.

SILVESTRI, *J.*, July 7, 1982—The City of Pittsburgh assessed Bindex Corporation for business privilege taxes for the years 1976 through 1980 in the total amount of $14,982.92.

Bindex filed an appeal to this court pursuant to the provisions of the Local Agency Law from said assessment.

After hearing, by opinion and order dated February 2, 1982 the appeal of Bindex was dismissed and Bindex was directed to pay the tax in the amount agreed to by the parties.

Bindex filed exceptions to the court's opinion and order which are now before us for disposition.

Bindex in its appeal from the assessment of business privilege taxes made by the city labeled the appeal, "Notice; Complaint for Permanent Injunction and Notice of Statutory Appeal." The averments of the appeal are that the city assessed Bindex for business privilege tax and that Bindex was ex-

---

10. The parties have agreed that the amounts due, if there be liability, are those sums set forth in the business privilege tax statements for assessments for the years 1976 through 1980—i.e., 1976—$865.30; 1977—$2,595.90; 1978—$2,314.00; 1979—$2,484.52; 1980—$2,763.08—less 5 percent of each sum plus penalty and interest.

empt by reason of being engaged in manufacturing. In its prayer for relief, Bindex requested the court to permanently enjoin the city from collecting or attempting to collect the business privilege tax, that the assessments made by the city to be contrary to law and of no effect, declare Bindex not subject to the business privilege tax.

Despite the labeling of the appeal and the request for relief, the appeal is simply an appeal from an adjudication by the city assessing Bindex for business privilege tax and it is neither an action in equity nor declaratory judgment.

This case being an appeal to this court pursuant to the Local Agency Law of April 28, 1978, P.L. 202, no. 53, §5; 2 Pa.C.J.A. 752, appeal from this court's opinion and order, is to the Commonwealth Court, 1976, July 9, P.L. 586, no. 142, §2, as amended; 42 Pa.C.J.A. 762. Thus, we are without jurisdiction to consider the exceptions.

## ORDER

And now, July 7, 1982, the appeal to the court en banc by Bindex Corporation is dismissed for lack of jurisdiction to hear the same.