Van Bennett Food Co., Inc., Appellant *v.* City of Reading, Pennsylvania, Appellee.

Argued May 4, 1984, before Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*Gene M. Venzke, Mogel, Speidel & Roland,* for appellant.

*Peter F. Cianci,* First Assistant City Solicitor, with him, *Jack A. Linton,* City Solicitor, for appellee.

OPINION BY JUDGE PALLADINO, January 9, 1985:

The City of Reading (City) filed a complaint on June 24, 1982, in the Court of Common Pleas of Berks County (trial court) seeking a declaratory judgment that the revenue which Van Bennett Food Co., Inc. (Appellant) receives from its production of certain food products is subject to the City's Business Privilege Tax which was enacted pursuant to the authority of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§6901-6922.

The articles produced by Appellant which are at issue include: potato salad, macaroni salad, cole slaw, pepper cabbage, baked lima beans, rice pudding, tapioca pudding, health salad, egg salad, tuna salad;

cranberry relish, potato filling, bread filling, corn pies, clam corn pies, oyster pies, clam chowder, macaroni and cheese and red beet eggs. The City argued before the trial court that these articles do not constitute manufactured goods and therefore do not fall within the manufacturing exemption found in Section IIIc(5) of the City's ordinance, which is similar to the exemption in Section 2(4) of the Enabling Act, 53 P.S. §6902(4).

At the nonjury trial the City offered evidence showing that since 1980, Appellant had not included in its gross receipts the income derived from the production and sale of the nineteen different food products listed above. The City also introduced into evidence Appellant's answers to the City's interrogatories detailing the method of preparation for each of these food products. Based on this evidence, the Chancellor concluded that Appellant's corn pies, clam corn pies and oyster pies are manufactured goods and are therefore not subject to the tax. The Chancellor further concluded that the remaining sixteen products are not manufactured and are subject to the City's tax. Appellant appealed this adjudication of the Chancellor which, after consideration of Appellant's exceptions, was adopted by the trial court *en banc*. This appeal followed.[1] For the reasons that follow, we affirm the trial court.

Section 2 of the Enabling Act, 53 P.S. §6902(4), provides that local authorities shall not have the authority:

(4) To levy, assess, and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture

---

[1] The City has not appealed the trial court's holding that Appellant's corn pies, clam corn pies and oyster pies are manufactured products.

. . . or on any privilege, act or transaction related to the business of manufacturing . . . with respect to the goods, articles and products of their own manufacture. . . .[2]

Thus, the issue presented for our consideration is whether Appellant's production of any or all of the sixteen different food products at issue constitutes "manufacturing" under the provisions of the Enabling Act and the City's ordinance so as to exempt the revenue derived from their sale from the City's Business Privilege Tax.

Inasmuch as the term "manufacturing" is not defined in either the Enabling Act or the City's ordinance, we are guided by numerous decisions of our Supreme Court from which has emerged the following definition:

"Manufacturing" as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 Atl. 148 (1928); Pittsburgh v. Electric Welding Company, 394 Pa. 60, 145 A.2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A.2d 572 (1955). If there is merely a superficial change in the original

---

[2] Section IIIc(5) of the City's ordinance similarly provides that: "No such tax shall be assessed and collected on goods, articles, and products, or on by-products of manufacture. . . ."

materials, without any substantial and well signalized transformation in form, qualities, and adaptability in use, it is not a new article or new production: Commonwealth v. Weiland, supra. Pittsburgh Electric Welding Co., supra. *Commonwealth v. Deitch Co.*, 449 Pa. 88, 93-94, 295 A.2d 834, 837 (1972) (quoting *Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 104, 202 A.2d 94, 96 (1964)). "The process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges." *Commonwealth v. Weiland Packing Co.*, 292 Pa. 447, 450, 141 A. 148, 149 (1928).

Several cases involving the production or processing of articles of food illustrate that "manufacturing" involves more than "merely a superficial change." For example, in *Weiland Packing Co.* our Supreme Court denied the "manufacturing" exemption to a corporation which cut, cured and smoked "hams" from the carcasses of slaughtered animals. The Court reasoned that "the purpose and use for which [the ham] was originally cut from the carcass . . . is exactly the same—to be used as food." *Id.* at 452-453, 141 A. at 150. Similarly, the Court in *Armour & Co. v. Pittsburgh,* 363 Pa. 109, 69 A.2d 405 (1949) held that the pickling, smoking, boiling, etc., of meat did not constitute "manufacturing" because a new and different substance did not emerge from the processing. In *Berlo Vending Co.*, mixing "popcorn" kernels, coconut oil, and salt and heating the mixture until the kernels "popped" was also held not to constitute "manufacturing". Although the kernels expanded to many times their original size, this change in form was deemed by the Court to be merely superficial. Moreover, the Court noted:

The popping of corn does not require any specific skill or elaborate machinery. It can be done in the home by a child in a smaller scope in the same manner as appellant accomplishes in its plant. There is no application of labor, skill, art or science to provide a well signalized change as those terms are known. There can be little doubt that the courts have required a certain degree of skill, art or science be employed.

*Id.* at 105, 202 A.2d at 96.

In *Commonwealth v. Lowry-Rodgers Co.,* 279 Pa. 361, 123 A. 855 (1924), our Supreme Court held that roasting coffee beans does not constitute "manufacturing" for mercantile license tax purposes. In response to the argument that the chemical change resulting from the roasting of beans brings that process within the definition of "manufacturing" the Court stated: "If this supposed distinction furnished the test, then frying eggs, etc., etc., would be manufacturing, for the application of heat to them requires skill, and effects a chemical change also; . . . [I]t is probable that few, if any, people would say that the process of cooking is in fact manufacturing. . . ." *Id.* at 367, 123 A. at 856. In *General Foods Corp. v. Pittsburgh,* 383 Pa. 244, 118 A.2d 572 (1955), the Court concluded that decaffeinated and instant coffee and tapioca were not manufactured goods inasmuch as these products had not "gone through a substantial transformation in form, qualit[y], and adaptability in use from the original material so that a new article or creation ha[d] emerged." *Id.* at 251-252, 118 A.2d at 576.

On the other hand, there have been cases in which certain food products have been deemed to be "manufactured" goods. In *Rieck-McJunkin Dairy Co. v.*

*School District of Pittsburgh,* 362 Pa. 13, 66 A.2d 295 (1949), the Court held that the making of ice cream, cottage cheese and butter constitutes manufacturing. The Court concluded that although these articles are made from milk which has been deemed not to be a manufactured product, they constitute " 'a new and different article' from the milk." *Id.* at 22, 66 A.2d at 299. In the more recent case of *Kirks Milk Products, Inc. v. Commonwealth,* 58 Pa. Commonwealth Ct. 230, 427 A.2d 688 (1981), this Court held that the production of skim milk powder and buttermilk constitutes "manufacturing". The Court found that production involved a high degree of skill, science and labor, and the final products were substantially different in form, qualities and adaptability in use from liquid milks.[3] In *Commonwealth v. Snyder's Bakery,* 348 Pa. 308, 35 A.2d 260 (1944), the production of potato chips from raw whole potatoes, hot fat, vegetable oils, and salt constituted "manufacturing" for mercantile license tax purposes. The Court held that the production of potato chips, consisting of cleaning, slicing, drying, immersing in hot fat and vegetable oils, draining, drying and salting raw potatoes resulted in a product which is different in its form and content from a raw potato and is adapted to an entirely different use.[4] The Court noted that

---

[3] The Court described the production method as ultilizing "an elaborate 'Lo-Temp' evaporation system with a three-cycle process, identified by refrigeration, product, and spray drying stages. . . ." *Id.* at 238, 427 A.2d at 691. Moreover, the Court noted that skim milk powder and buttermilk are used principally as ingredients in special dried foods and prepared dry mixes where it is not possible to use liquid milks.

[4] The Court stated: "[W]hile the potato chip is still basically a potato product, yet it has no resemblance to a raw potato, either in appearance or texture, and it is useful in that it is ready for instant consumption without any further preparation." *Snyder's*

"[t]his is not a case where there has been a mere chemical change in the article itself." *Id.* at 310, 35 A.2d at 261. And in *Pillsbury Mills, Inc. v. Pittsburgh School District,* 408 Pa. 369, 184 A.2d 236 (1962), the milling of wheat into flour was said to be "manufacturing" for mercantile license tax purposes. The milling operation was said to be "an intricate technologically sophisticated process . . . [which] includes the grinding, blending and processing of the many types of wheat into flour of varying characteristics which will be used for countless purposes". *Id.* at 372, 184 A.2d at 237.

Thus, we must determine first whether the preparation methods used for the food products at issue consists of the application of a high degree of skill, science and labor; and second, whether there has been a substantial transformation in form, qualities and

---

*Bakery,* 348 Pa. at 310, 35 A.2d at 261. In this regard, the holding in *Snyder's Bakery* appears inconsistent with that of *Lowry-Rodgers* inasmuch as most raw products which are "cooked" are ready for instant consumption.

Our Supreme Court in *Berlo Vending Co.* (popcorn) made the following observation with respect to the holding in *Snyder's Bakery:* "While the court below expressed doubt as to the current validity of the Snyder's Bakery case, we need express no view as to that observation. It is quite clear that the production of popcorn involves far less control factors, skill and science than does the production of potato chips." *Berlo Vending Co.,* 415 Pa. at 105, 202 A.2d at 97. The production of potato chips included: monitoring the temperature at which the potatoes were stored so as to allow for a chemical change to take place; increasing the temperature and testing for the proper relationship between the starch and sugar content; passing the sliced potatoes through a frying machine at which point the potatoes came in contact with a temperature of 450 to 475 degrees; draining off the fat and passing the chips through an automatic salting machine. As will be discussed in greater detail below, the preparation of the various food products at issue in the instant case also involve less skill, science and labor than does the production of potato chips.

adaptability in use so as to produce a new, different and useful article.

With respect to the food products at issue in the instant case, the record indicates that the preparation of cole slaw, pepper cabbage, health salad, tuna salad, and cranberry relish all involve a similar process consisting of cutting, chopping or dicing the primary ingredients,[5] blending them together in a prepared dressing and packaging the final product. We do not find that the preparation of these products constitutes "manufacturing" as that term has been defined. We fail to see how the preparation of these products requires a high degree of skill, science or labor. It can certainly be done in the home on a smaller scale. *See Berlo Vending Co.* Moreover, although the method of preparation altered the size, shape and, in some instances, color of the original ingredients, these ingredients had not been changed to new and useful articles, substantially different in qualities and adaptability in use. The ingredients retained their same essential qualities and surely the final product is not to be put to a use not intended for the original ingredients.

The preparation of potato and macaroni salad, baked lima beans, potato filling, bread filling, red beet eggs, egg salad, macaroni and cheese, rice pudding, tapioca pudding, and clam chowder also involves the blending together of a number of ingredients.[6] The distinguishing feature is that the preparation of these products involves cooking some or all of the ingredi-

---

[5] The primary ingredient in cole slaw and, of course, pepper cabbage is cabbage. Health salad consists of cabbage, carrots, celery and peppers. The tuna in tuna salad is tuna canned in water. The prepared dressing is usually made from mayonnais or vinegar.

[6] These ingredients generally include vegetables, prepared dressings and spices.

ents. The preparation of both macaroni salad and macaroni and cheese involves cooking the macaroni to the desired consistency prior to blending it together with the other ingredients. Baked lima beans are prepared by baking the beans in a prepared sauce. Potato salad and filling are prepared by steaming the diced potatoes prior to mixing them together with the other ingredients. Bread filling is prepared by sauteing various vegetables and spices prior to blending them together with bread. The preparation of red beet eggs consists of steaming eggs prior to adding them to the prepared beet juice. The eggs in egg salad are boiled and cooled prior to blending them in a prepared dressing. Rice pudding is prepared by cooking the rice, adding the remaining ingredients and baking the mixture. Tapioca pudding is prepared by cooking the granulated tapioca, milk and the remaining ingredients in a kettle. Finally, clam chowder is prepared by cooking the clam base, chopped clams, chopped vegetables and remaining ingredients in a kettle.

Although cooking is involved in the preparation of these products, no high degree of skill, science or labor is required. Moreover, as noted previously, our Supreme Court in *Lowry-Rodgers Co.* concluded that cooking is not manufacturing. Although cooking chemically and physically altered the original ingredients a new and different product has not emerged. The final product is not to be put to a use other than that which had been intended for the original ingredients.

For these reasons, we conclude that Appellant's preparation of the sixteen food products at issue does not constitute ''manufacturing'' and hence is not entitled to the exemption. Accordingly, we affirm the order of the trial court.

## ORDER

AND Now, January 9, 1985, the order of the Court of Common Pleas of Berks County at Civil Action No. 289, June, 1982, dated November 14, 1983, is affirmed.