# Philadelphia School District v. Mutual Trimming and Binding Co.

*Edward B. Soken* and *C. Brewster Rhoads*, for school district.

*Franklin Poul*, of *Wolf, Block, Schorr & Solis-Cohen*, for defendant.

Bok, P. J., October 15, 1957.—These claims for taxes arise under the General Business Tax Act of May 23, 1949, P. L. 1669, 24 PS §584.1 et seq., and the Mercantile License Tax Act of June 20, 1947, P. L. 745, 24 PS §582.1 et seq.

The acts read as follows:

Act of May 23, 1949, P. L. 1669, sec. 1(5) (d):

" 'Receipts' shall exclude . . . (d) the receipts or the portion thereof attributable to any sale involving the bona fide delivery of goods, commodities, wares or merchandise of the taxpayer's own manufacture, growth or produce, to a location regularly maintained by the other party to the transaction outside the limits of such school district, and not for the purpose of evading or avoiding payment of the tax or any portion thereof imposed under this act."

Act of June 20, 1947, P. L. 745, sec. 1(4) :

"(4) 'Dealer in, or vendor of, goods, wares and merchandise' shall not include any mechanic who keeps a store or warehouse at his place of manufactory or workshop in which he sells only his own manufactures, any person vending or disposing of articles of his own growth, produce or manufacture, or any hawker or peddler licensed under any law of this Commonwealth."

The question is whether defendant's activities are taxable. It contends that they are not, because they constitute manufacturing.

We assume at the outset that plaintiff will not endeavor to collect taxes beyond the limitation set forth in section (8a) of the Act of 1949, supra. This was held to be a statute of limitation in Smythe Paper Co. v. School District of Philadelphia, C. P. 5, June term, 1955, no. 4211, and School District v. La Touraine Coffee Co., C. P. 5, September term, 1955, no. 8228, from which decisions no appeal was taken by the school district.

We are of opinion that the activities described to us are processing rather than manufacturing and hence are taxable.

There are two products involved, bias goods and linings. To create bias goods, defendant buys cloth from the mills and has an outside concern finish it

with regard to color, width, length and resistance to shrinkage. It then takes the product and cuts it, folds it, presses it and puts it on rolls. The "bias" idea comes from cutting the cloth at a certain angle to the threads so that the cloth will stretch. The result is a binding that is used in the production of clothing.

To create linings, defendant again buys cloth and has it finished outside. It then takes the product and cuts it, including a few small notches, into shapes that are used to stiffen collars and cuffs.

In neither operation is anything added to the cloth as it is received from the finisher. In the one it is cut, pressed and folded, in the other it is cut to a certain shape.

It is easier to feel the line of distinction in the cases than to express it, but there are a few helpful formulations. In Commonwealth v. Weiland Packing Co., 292 Pa. 447 (1928), defendant operated a packing house where meat was killed, dressed and cured. In holding this not to be manufacture, the court said:

". . . the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form, qualities and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged,—a new production been created."

In General Foods Corporation v. Pittsburgh, 383 Pa. 244 (1955), exemption was denied to the production of decaffeinated and instant coffee, tapioca and other canned products. The court said:

"None of those articles is a manufactured product, not having gone through a substantial transforma-

tion in form, qualities and adaptability in use from the original material so that a new article or creation has emerged."

In Commonwealth v. Paul W. Bounds Company, 316 Pa. 29 (1934), the company bought rough limestone, bluestone, granite, marble, which it then split or sawed into proper sizes for polishing and dressing. The court said:

"In common speech, this would no more be termed manufacturing than would the cutting and carving of stone by stone masons or the cutting, carving and ornamentation of stones by tombstone makers or the cutting and chipping of bricks to make arches, etc., by bricklayers": Page 32.

"Furthermore, we have said that in determining whether a corporation is actually a manufacturing one, we will reach our conclusion, not by finely drawn distinctions in what it does, but by considering whether, in the popular understanding of language, what it is engaged in is manufacturing": Page 31.

This case is a perfect analogy, rough stone or rough cloth; and both subjected to a process which brought them forward to a particular kind of usefulness in the final product. In both cases the process was more a rearrangement than a manufacture.

The same result was reached in Rieck-McJunkin Dairy Co. v. Pittsburgh School District, 362 Pa. 13 (1949), with regard to homogenized milk; in Commonwealth v. The Welsh Mountain Mining and Kaolin Manufacturing Company, 265 Pa. 380 (1919), where mined silica rock was crushed and separated into useful sizes; in Commonwealth v. Dyer Quarry Co., 250 Pa. 589 (1915), again concerning quarrying and crushing stone; in Commonwealth v. Lowry-Rodgers Co., 279 Pa. 361 (1924), where coffee beans were cleaned, skinned and roasted; in Commonwealth v. Sunbeam Water Co., 284 Pa. 180 (1925), where city

water was bought, converted into steam, condensed and bottled as distilled water; in Commonwealth v. Consolidated Dressed Beef Co., 242 Pa. 163 (1913) and 245 Pa. 605 (1914), and Armour & Company v. Pittsburgh, 363 Pa. 109 (1949), concerning the creation out of animal carcasses of lard, tallow, grease, hides, hams, bacon, pickled meats, etc.

The lower court case of Commonwealth v. Lichtman, 36 D. & C. 301 (1939), is very nearly in point. Defendant bought shirt material, designed them and cut them into patterns. It then supplied separate linings, buttons and labels and sent the lot to an outside concern which put it all together into finished shirts and returned them to defendant for shipment. It was held not to be manufacturing.

We therefore conclude that defendant was not manufacturing, so far as its bias goods and linings are concerned.

The exceptions are sustained and judgment is entered for plaintiff and against defendant for the appropriate amount of tax. Counsel will submit a calculation, but failing agreement as to the amount due, a further hearing will be had to establish it.