## Commonwealth v. Tetley Tea Company, Inc.

*Vincent X. Yakowicz*, Deputy Attorney General, for Commonwealth.

*Robert L. Trescher*, for appellant.

HERMAN, J., January 10, 1966.—Tetley Tea Company, Inc., appeals to this court from the decision of

the Board of Finance and Revenue refusing its petition for review of the settlement of its franchise tax for the fiscal year ending August 31, 1959.

Appellant's complaint is that the taxing department of the Commonwealth should have allowed it a manufacturer's exemption. The disallowance resulted in changing the total proportion of Tetley's taxable assets from the company's figure of 5.1781 percent to 12.0877 percent and thus to a tax of $867.72 instead of $371.71, which appellant alleges it should have been.

The only question before us in this appeal, then, is, as appellant states in its brief: "Does the production of tea bags [1] by Tetley Tea Company, Inc., at its Williamsport, Pennsylvania plant constitute 'manufacturing' within the meaning of the manufacturing exemption of the Franchise Tax Act"?

The parties have stipulated that a trial by jury be dispensed with, in accordance with the Act of April 22, 1874, P. L. 109, 12 PS §688, and they have likewise stipulated much of the facts. Facts not stipulated were adduced at a hearing. From the stipulation and the hearing, we find the following to be the pertinent facts:

Appellant is a corporation organized under the laws of the State of New York to, inter alia, "manufacture" food products, including tea, and is authorized in this Commonwealth to engage in manufacturing.

At its plant in Williamsport, Pa., the company sifts and screens tea and mixes it into a distinctive blend. This blended tea is then put in hoppers, from which it is fed into the tea bag machinery. At the beginning of the process of bag making, a roll of specially prepared heat-sealing paper is fed into the machinery, which folds it, cuts it, and with the application of 300 degrees

---

[1] It was stipulated that the term "tea bags", as used throughout this proceeding, "refers to specially blended tea leaves enclosed in a specially treated permeable paper to which is attached a string and tag".

to 400 degrees F. temperature, it is sealed along two sides, forming a bag. One two-hundredths of a pound of the blended tea is then injected into each bag, the remaining open end is heat sealed, the completed and filled bag is trimmed, a string and tag are attached and it is packaged for shipment.[2]

The Tetley plant at Williamsport was built by Industrial Properties Corporation, a nonprofit organization which used public funds under the Pennsylvania Industrial Development Authority. The factory was then leased to Tetley for 20 years under a rental agreement, by which Tetley could at the end of the term acquire the plant for $1. The lease further provided that the building be used only for manufacturing purposes.

The Capital Stock Tax Act of June 1, 1889, P. L. 420, as amended by the Act of March 15, 1956, P. L. (1955) 1285, 72 PS §1871(b), provides, in pertinent part, that foreign corporations shall pay annually a franchise tax at the rate of five mills on the taxable value of their stock. The act also provides, however, for a "manufacturing exemption".

Appellant and its property are within the language of the act imposing the tax, and so the exempting provisions must be strictly construed: Commonwealth v. Berlo Vending Company, 415 Pa. 101 (1964); Commonwealth v. Sitkin's Junk Co., 412 Pa. 132 (1963). The burden is on the taxpayer, and we are of the opinion that appellant has not shown a clear right to the exemption.

As Mr. Justice Roberts said, in Commonwealth v. Berlo Vending Company, supra, page 104:

---

[2] It is true, as averred by appellant, that the blending of the tea is a difficult and exacting process; the paper used in the bags is a very special paper, permitting boiling water to penetrate it and dissolve the tea without breaking the bag, and that large and expensive machinery is used in preparing and filling the bags.

"The meaning of 'manufacturing' has been restated by this Court in Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361, 364, 167 A. 2d 257, 258-59 (1961) : ' "Manufacturing" as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 Atl. 148 (1928) ; Pittsburgh v. Electric Welding Co., 394 Pa. 60, 145 A. 2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A. 2d 572 (1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production: Commonwealth v. Weiland, supra; Pittsburgh v. Electric Welding Co., supra' ".

And our late President Judge Neely, in Commonwealth v. H. J. Williams Co., Inc., 78 Dauph. 377 (1962), said, at page 382:

"Generally, it has been held that to constitute manufacturing, there must be produced a new and different product in an activity which according to common usage and custom is popularly regarded as manufacturing. The activity is one which produces an article of commerce: Commonwealth v. Wark Co., 301 Pa. 150 (1930) ; Hazen Engineering Company v. Pittsburgh, 189 Pa. Super. Ct. 531 (1959) ; Commonwealth v. The John T. Dyer Quarry Company, 250 Pa. 589 (1915) ; Commonwealth v. The Welsh Mountain Mining & Kaolin Manufacturing Company, 265 Pa. 380 (1919) ; Commonwealth v. Ellwood Sand Co., 21 Dauphin 114

(1918); Commonwealth v. Cover, 29 Pa. Super. Ct. 409 (1905); Norris Brothers v. The Commonwealth, 27 Pa. 494 (1856); Pittsburgh v. Electric Welding Company, 394 Pa. 60 (1958); Rieck-McJunkin Dairy Company, et al. v. Pittsburgh School District, et al., 362 Pa. 13 (1949); Armour and Company v. Pittsburgh, et al., 363 Pa. 109 (1949); Atlantic Refining Company Case, 398 Pa. 30 (1959); Philadelphia School District v. Rosenberg, 402 Pa. 365 (1961); Philadelphia School District v. Parent Metal Products, Inc., 402 Pa. 361 (1961). See Commonwealth v. Donovan Co., 76 Dauphin 191 (1960) (Herman J.), where many of the decisions on this subject are reviewed".

See also the opinion of this court written by Shelley, J., in Commonwealth v. American Ice Co., 77 Dauph. 35 (1961), affirmed, 406 Pa. 322.

Many cases have pointed out that neither skilled labor nor delicate operations, a large plant and expensive and complicated machinery, considered separately or collectively, can turn a nonmanufacturing process into manufacturing: Armour and Company v. Pittsburgh, 363 Pa. 109 (1949); Rieck-McJunkin Dairy Company v. Pittsburgh School District, 362 Pa. 13 (1949); Commonwealth v. Hardes Lumber Corp., 27 D. & C. 2d 657, 77 Dauph. 359 (1963).

Before a corporation can receive the benefit of the manufacturer's exemption, there must emerge from its activity a new and different product, and this product must be sold by it as an article of commerce: Commonwealth v. McCrady-Rodgers Company, 316 Pa. 155 (1934). The fact that appellant here makes a "bag" is not sufficient to warrant an exemption. The bag is not the article of commerce sold. The company begins with tea and it is tea that is sold to the public. True, it is in a much handier form, and there is a growing demand for tea in the disposable bags, but in our judgment this is not sufficient. As the Common-

wealth contends, "It is tea when it goes in the plant, and it is still tea when it comes out of the plant. It is tea which Tetley buys. It is tea which Tetley sells. It is not a new and different product with a new and different use. You still put it in boiling water. You still drink the liquid and dispose of the tea leaves. The texture is the same. The smell is the same. The taste is the same. The tea bag is worthless and has no commercial value without the tea".

Appellant has cited and has relied heavily on Commissioner of Corporations and Taxation (Salada Tea Co.) v. Board of Assessors of Boston, 324 Mass. 32, 84 N. E. 2d 531 (1949), and while this is an interesting and informative case, it is not persuasive of the issue in the instant case. There, an entirely different tax statute was involved, and we in this court are governed by the Pennsylvania decisions interpreting our Pennsylvania statutes: General Foods Corporation v. Pittsburgh, 383 Pa. 244 (1955) ; Commonwealth v. Hardes Lumber Corp., supra.

Appellant further argues that great weight should be given to the fact that its lease requires that the premises be used for manufacturing and for no other purpose without the consent of the lessor. While the continued occupancy of the premises by appellant under this lease and the continued production of tea bags indicates that both lessor and lessee consider appellant's activity as manufacturing, we are not thereby persuaded, and must conclude that appellant is not entitled to the manufacturing exemption. See Commonwealth v. Hardes Lumber Corp., supra.

### CONCLUSIONS OF LAW

1. Appellant is a New York corporation which is authorized to do business in Pennsylvania and is subject to franchise tax liability under the Act of June 1, 1889, P. L. 420, sec. 21(b), as amended by the Act of March 15, 1956, P. L. (1955) 1285, 72 PS §1871(b).

2. Appellant's activities in the production of tea bags do not constitute manufacturing, and appellant is thereby not exempt from the payment of a franchise tax on such activities under the Act of June 1, 1889, P. L. 420, sec. 21(b), as amended by the Act of March 15, 1956, P. L. (1955) 1285, 72 PS §1871(b).

3. The Commonwealth was correct in its settlement of appellant's franchise tax for the fiscal year ending August 31, 1959, and consequently the appeal should be dismissed.

4. Judgment should be entered in favor of the Commonwealth and against Tetley Tea Company, Inc., in the amount of $867.72, of which $371.71 was paid.

5. The said judgment upon payment of $496.01, plus interest, penalty and costs should be marked satisfied.

### ORDER

And now, January 10, 1966, the appeal is dismissed, and judgment is directed to be entered in favor of the Commonwealth and against Tetley Tea Company, Inc., in the amount of $867.72, unless exceptions be filed hereto within 30 days. The sum of $371.71 having been paid, the judgment shall be marked satisfied upon the payment of $496.01, plus costs and interest according to law.

The prothonotary is directed to notify all parties hereto or their counsel of this order forthwith.