IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quality Driven Copack, Inc., :
                Petitioner :
                : Nos. 862 and 879 F.R. 2013
       v. :
                : Submitted: October 12, 2022
Commonwealth of Pennsylvania, :
                Respondent :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                 FILED: November 29, 2022

Before the Court are the exceptions (Exceptions) filed by Petitioner Quality Driven Copack, Inc. (Taxpayer) and Respondent Commonwealth of Pennsylvania (Commonwealth) to this Court's December 29, 2021 Memorandum Opinion and Order, which affirmed in part and reversed in part the September 24, 2013 orders of the Board of Finance and Revenue (BFR). *See Quality Driven Copack Inc. v. Commonwealth of Pennsylvania* (Pa. Cmwlth. Nos. 862 and 879 F.R. 2013, filed December 29, 2021), slip op. at 23 (*QDC I*), 271 A.3d 549 (Pa. Cmwlth. 2021) (Table). The BFR's orders (1) denied Taxpayer's appeals from the determinations of the Pennsylvania Department of Revenue's Board of Appeals (Appeals Board) regarding

Taxpayer's sales and use tax assessment, and (2) denied Taxpayer's request for a refund of alleged sales and use tax overpayments.[1]

After review, we overrule the Exceptions in their entirety.

## I. FACTS AND PROCEDURAL HISTORY

In *QDC I,* we summarized as follows the pertinent facts and procedural history of this case:

> Taxpayer is a Pennsylvania corporation engaged in the business of assembling, and then selling at the wholesale level, pre-cooked frozen ingredients into frozen sandwiches, entrees, and bowl/bag type meals.
>
> . . . .
>
> Taxpayer was the subject of a Pennsylvania sales and use tax audit for the period January 1, 2007 to June 30, 2010. Pursuant to that audit, Taxpayer was issued the following assessment: Pennsylvania Use Tax $1,219,541.68, Allegheny County Use Tax $2,560.91, Philadelphia County Use Tax $156,090.50, Penalty $413,457.72, and Interest $175,212.04, for a total assessment of $1,966,862.85. The Appeals Board sustained the

---

[1] The BFR issued two separate decisions, both of which Taxpayer appealed. Taxpayer's petition for review of the BFR's decision denying a refund is docketed at 862 F.R. 2013. Taxpayer's petition for review of the BFR's sales and use tax assessment is docketed at 879 F.R. 2013. We ordered consolidation of both appeals on November 4, 2020, and the parties stipulated as follows with regard to the issues and tax assessments involved in both cases:

> In No. 879 F.R. 2013, the Taxpayer appealed the audit assessment. In No. 862 F.R., the Taxpayer appealed the refund for which the Taxpayer has requested a refund on the exact same transactions that were assessed. Because the Taxpayer has not established that tax was paid on those transactions, the [p]arties stipulate and agree that to the extent this Court determines the Taxpayer is entitled to a relief, these matters will be remanded to the [BFR] for confirmation of proof of payment in the refund appeal and for a calculation of the amount of the refund owed to the Taxpayer and tax reduction in the assessment.

(Stipulation of Fact, 10/29/20, ¶ 19). Our order in *QDC I* remanding the matter to the BFR is consistent with and was predicated on this stipulation.

tax portion of the assessment, with interest, in its entirety. All assessed penalties were abated . . . .

To create its product, Taxpayer purchases the food components and packaging materials, blends the components into meals, packages them into various types of containers, and then freezes them to complete the process . . . .

Taxpayer claims that it is engaged in manufacturing and processing for sales and use tax purposes in Pennsylvania as defined in 72 P.S. [§] 7201(c) and (d)[2] and 61 Pa. Code § 32.1.[] Therefore, Taxpayer contends that it should not have been assessed use tax on machinery and equipment, and repair parts and services to such machinery and equipment, which is directly used in manufacturing/processing operations pursuant to 61 Pa. Code §32.32(a)(1).[] In addition to its manufacturing arguments, Taxpayer further claims that the auditor erroneously assessed use tax on a variety of expense transactions, including certain services that it claims were erroneously characterized as help supply[3] services. . . .

*QDC I,* slip op at 2-5 (quoting BFR Dec. and Order, BFR Docket No. 1201689, 9/24/13, at 2) (footnotes omitted). We further explained:

Taxpayer appealed the above-referenced Appeals Board decision, along with the Appeals Board decision denying Taxpayer's request for relief for taxes that were allegedly overpaid, to the BFR, asserting it was entitled to relief under the manufacturing exemption of the Tax Code. Taxpayer also asserted that the Commonwealth was in violation of various clauses of the Pennsylvania and United States Constitutions, as well as the Pennsylvania [Local] Taxpayers[ ] Bill of Rights

---

[2] Subsections 201(c) and (d) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7201(c) and (d).

[3] Pursuant to Section 202 of the Tax Code, 72 P.S. § 7202, and 61 Pa. Code § 60.4(b), the use of help supply services is subject to sales and use taxation. "Help supply" is defined in 72 P.S. § 7201(cc) and 61 Pa. Code § 60.4(a)(ii).

3

[Act],[4] and thus, Taxpayer was entitled to attorney's fees. In its [d]ecisions, the BFR noted that Taxpayer stated it would provide the BFR with "descriptions of use, invoices, and proof of payment prior to hearing" and that Taxpayer's appeal petition (relative to BFR Docket No. 1201689) "was not filed with an appeal schedule of contested transactions and supporting information"; however, no such information was ever provided.

After review of Taxpayer's appeals, the BFR concluded that Taxpayer was not entitled to relief under the arguments it made in its petitions. In addition, to the extent Taxpayer did not provide the Appeals Board or the BFR with any supporting information/documentation, the BFR determined it did not have anything to review to determine if Taxpayer had "erroneously paid tax" or "was erroneously assessed." Further, the BFR determined it did not have the authority to "pass upon the validity or constitutionality of the law" or the authority to award attorney's fees. Thus, the BFR denied Taxpayer's appeal petitions. Taxpayer subsequently filed Petitions for Review[ ] with this Court.

*Id.* at 5-6 (citations and footnotes omitted).

## II.    *QDC I*

In its petition for review,[5] Taxpayer argued, as it did before both the Appeals Board and BFR, that it qualifies for the sales and use tax "manufacturing/processing" exemption because it is engaged in "manufacturing" as that term is defined in the above-referenced provisions of the Tax Code and Department of Revenue regulations. It also again argued that its contract labor does

---

[4] 53 Pa. C.S. §§ 8421-8438.

[5] "This Court reviews *de novo* the determinations of the [BFR]," and "[a]lthough cases from the [BFR] are addressed to our appellate jurisdiction, we function as a trial court." *Allegheny County Department of Public Works v. Commonwealth*, 222 A.3d 450, 452 n. 3 (Pa. Cmwlth. 2019) (citations omitted).

4

not qualify as "help supply" and is, therefore, exempt from sales and use tax. The Commonwealth disagreed on both points, arguing that Taxpayer does not engage in manufacturing because its food packaging process does not bring about a change in the form, composition, or character of the ingredients used in the process. The Commonwealth also argued that Taxpayer's contract labor is "help supply" subject to sales and use tax because Taxpayer retains control over its production process and requires the vendor's workers to comply with its policies and procedures. The Commonwealth further contended that, even assuming Taxpayer was successful on appeal, it was not entitled to a refund because it did not, in fact, pay the taxes assessed.

In *QDC I*, we first concluded that Taxpayer's preparation of ready-to-eat meals was not "manufacturing" for sales and use tax purposes because "[a]lthough it is true that Taxpayer takes individual food products and transforms them into prepackaged, ready-to-use, full meals, this process does not result in the kind of substantive change necessary to qualify for the tax exemption it seeks." *QDC I*, slip op. at 19. We likened Taxpayer's process to preparing and packaging tea mixes in teabags, making popcorn, and mixing and dressing salads, none of which constitutes "manufacturing" under Pennsylvania law. *Id.* (citing *Commonwealth v. Tetley Tea Co.*, 220 A.2d 832 (Pa. 1966) (teabags), *Commonwealth v. Berlo Vending Co.*, 202 A.2d 94 (Pa. 1964) (popcorn), and *Van Bennett Food Co., Inc. v. City of Reading*, 486 A.2d 1025 (Pa. Cmwlth. 1985) (salads)).

We also concluded, however, that Taxpayer's contract labor does not constitute "help supply" and therefore is exempt from sales and use tax. Although Taxpayer retains ultimate authority over its production process, we nevertheless found that "its contractors worked independently on the plant floor with very little hands-on oversight by Taxpayer." *Id.* at 20, 22-23. We therefore concluded that Taxpayer did not provide "the requisite level of direction for the third-party labor services to be considered help supply" and reversed the portion of the BFR's decision concluding to

5

the contrary. *Id.* at 22.[6] We remanded the case to the BFR to re-calculate Taxpayer's sales and use tax assessment and issue a refund, if appropriate. *Id.* at 23, Order.

## III.  EXCEPTIONS

Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 1571(i), which governs our review of BFR determinations, provides, in pertinent part, as follows:

> (i) Exceptions. Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect . . . of an order expressly granting reconsideration of the determination previously entered by the court. . . .

Pa. R.A.P. 1571(i). The mere restatement of arguments already asserted in an initial appeal will not, without more, justify granting exceptions. *Greenwood Gaming & Entertainment, Inc. v. Commonwealth*, 218 A.3d 982, 988 (Pa. Cmwlth. 2019); *Consolidated Rail Corporation v. Commonwealth*, 679 A.2d 303, 304 (Pa. Cmwlth. 1996), *aff'd*, 691 A.2d 456 (Pa. 1997); *Kalodner v. Commonwealth*, 636 A.2d 1230, 1231-32 (Pa. Cmwlth. 1994), *aff'd*, 675 A.2d 710 (Pa. 1995).

### A.  Taxpayer Exceptions

In its exceptions, Taxpayer takes issue with our determination that it is not engaged in "manufacturing" and therefore is not entitled to the benefit of the associated exemption from sales and use tax. Taxpayer's arguments and briefing in support of its exceptions are virtually identical to those it offered to the Court in *QDC I*. We understood and thoroughly dealt with those arguments there. Because Taxpayer has not established any change in circumstances or other basis for reconsideration on this

---

[6] Taxpayer asserted constitutional challenges to the BFR's determinations and also requested attorneys' fees. It did not brief those issues, however, and we accordingly did not address them. *QDC I*, slip op. at 13 n. 9.

6

issue, we remain soundly convinced that our determination was correct. Taxpayer's exceptions accordingly are overruled.

### B.    Commonwealth Exceptions

All of the Commonwealth's five exceptions take issue with our determination that Taxpayer's contract labor does not constitute "help supply" and therefore is not subject to sales and use tax. The Commonwealth argues that we erred in (1) concluding that "hands-on" supervision by Taxpayer is required, (2) concluding that Taxpayer's affidavits were "largely unrebutted," and (3) shifting the burden to the Commonwealth to prove that Taxpayer's contract labor is taxable. Essentially, the Commonwealth argues that, because Taxpayer retained quality control authority and imposed its own policies and procedures on its vendor's workforce through the vendor's supervisors, Taxpayer sufficiently "supervises" the vendor's employees to bring them within the definition of "help supply." We again disagree.

Although it is undisputed that Taxpayer retained control over its food-packaging process and utilized its vendor's supervisors to implement its policies and procedures on the production line, it does not necessarily follow, as the Commonwealth argues, that Taxpayer "supervised" its vendor's employees. As we previously noted, *see QDC I,* slip op. at 22, it is hard to envisage a scenario where a purchaser of contract labor would *not* retain ultimate authority over its own production process, if for no other reason than to ensure regulatory compliance. The pertinent question, however, is whether Taxpayer *supervises* its vendor's employees. As the stipulations of fact submitted by the parties indicate, Taxpayer retained quality control authority and could replace any vendor employee that underperformed or did not comply with safety and sanitary guidelines. (Stipulation of Fact, 10/29/20, ¶¶ 17-18.) Taxpayer's plant manager also oversaw all plant activities, including "meeting with staffing contractor's personnel, overseeing shipping and purchasing, and meeting with the government agencies that monitor [Taxpayer's] production process." (*Id.* ¶ 12.) Nevertheless, the

7

staffing contractor and its supervisors train employees, determine working hours, manage workloads, and inspect production lines. (*Id.* ¶¶ 14-16.) These latter tasks clearly were in view in *QDC I* where we referred to "hands-on" supervision:

> The distinction in each case is the actual degree of authority exercised by the taxpayer. Thus, every scenario requires its own analysis. This analysis must include a close assessment of the degree of ground-level direction provided by the contractor versus the level of direction retained by the subject taxpayer/manufacturer. Here, Taxpayer's largely unrebutted affidavits support the position that its contractors worked independently on the plant floor with very little hands-on oversight by Taxpayer. Accordingly, we cannot say that Taxpayer provided the requisite level of direction for the third-party labor services to be considered help supply services as defined, and thus, we cannot say Taxpayer was required to pay tax on those services.

(*Id.* at 22.) This is the correct analysis. Thus, and the Commonwealth's creative characterizations notwithstanding, in *QDC I* we did not ignore stipulations of fact, shift any burdens, or inject additional requirements into the Tax Code. We continue to conclude that the *QDC I* correctly determined that Taxpayer's contract labor was not "help supply" and, thus, not subject to sales and use taxation.

## IV. CONCLUSION

Both Taxpayer's and the Commonwealth's exceptions lack merit. We accordingly will overrule them in their entirety and remand this matter to the BFR for further proceedings as directed in *QDC I*.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quality Driven Copack, Inc.,       :
           Petitioner       :
                             :   Nos. 862 and 879 F.R. 2013
             v.                :
                             :
Commonwealth of Pennsylvania,       :
           Respondent      :

## *<u>ORDER</u>*

AND NOW, this 29th day of November, 2022, the exceptions filed by Quality Driven Copack, Inc. and the Commonwealth of Pennsylvania are OVERRULED, and this Court's December 29, 2021 Memorandum Opinion and Order are AFFIRMED in all respects. The Prothonotary is directed to enter judgment accordingly, and this matter is remanded to the Board of Finance and Revenue to make any necessary determinations in accordance therewith.

Jurisdiction relinquished.

 

                                  _____
                                  PATRICIA A. McCULLOUGH, Judge